We have our third of four cases today, numbers 18-2276 and 3424 Columbia Gas Transmission LLC v. An Easementto Construct, etc. And I'm going to mispronounce it, Claphaic v. Columbia Gas. We have Messrs. Mr. Smith and Ms. Snyder-Bagnall. Good afternoon, Your Honors. My name is Steve Gibbs. Did I say Gibbs? Oh, you said Smith. I meant Stephen Gibbs and Ms. Snyder-Bagnall. I represent... I screw up names regularly the last two days. Claphaic is actually, the PH is phonetically together like an F. I represent Cecil Claphaic in these consolidated appeals. Can I pronounce that last name? Claphaic. Claphaic? Yes. Claphaic, okay. With the Court's permission, I would like to reserve four minutes for remodel. Sure. When Congress passed the Natural Gas Act, it included an eminent domain provision to ensure that the public interest in natural gas transmission was not obstructed by landowners unwilling to permit pipelines across their properties. Cecil Claphaic is not the sort of landowner that Congress intended this provision to target. Ms. Claphaic has had Line 1570 on her property since she purchased the farm in 1956, and her agreement with Columbia has been the same for the entirety of that 60-plus years. She has never indicated that she would attempt to prevent replacement of Line 1570 in accordance with the terms of her agreement with Columbia. The original easement? Correct. The 1946 easement agreement. The exercise of eminent domain operates in derogation of property rights, and for that reason, the eminent domain provision of the Natural Gas Act is strictly construed when exercised by private parties such as Columbia. While the exercise of eminent domain is undoubtedly necessary at times in order to prevent unreasonable landowners from impeding projects that are in the public interest, this is not one of those times. The Natural Gas Act allows Columbia to exercise eminent domain to acquire property interests that it cannot otherwise acquire. The easement agreement says that Columbia may, quote, at any time lay a second pipeline. So doesn't the word may mean that Columbia has an option but not an obligation to lay a second line under the conditions of the agreement? Well, so there are a couple of points where I think that that fails. First of all, this is a replacement of Line 1570, and so there really isn't a second pipeline going in. It is a replacement of Line 1570. It will be called Line 1570. In one nomenclature, yeah, it may be a replacement, but in another, it could be that we're just letting that one go. We're wiping the slate clean, and we're using eminent domain in order to try to get a pipeline across this property. And then the question becomes, under the 46th agreement, is this really alongside the other pipeline? And looking at the map here, it seems that even though it's on the property, it's a fair piece away, as we would say. And diverging, so that it sort of varies in terms of the distance. Taking a step back for just a moment, I would just mention that replacement is not my term. That is what Columbia has described this project as, a replacement of Line 1570. The new line is in place, correct? Yes, yes. There's some additional work continuing, but it is, in fact, laid. So what are you going to – and, you know, there was not a stay here of this. What's going to be accomplished? Well, we did not attempt to stay it because, as I've mentioned, we never had any intent to prevent a pipeline from going. So what is it you want? That the pipeline, the replacement pipeline, should be laid in accordance with and under the terms of – That ship has sailed. The new pipeline is in place, correct? Don't you want the TAP? Well, the TAP is a piece of it. I'm just guessing that the TAP seems to be a real big piece of it. It's a very significant piece of it. I mean, that's a huge incentive for a landowner in a rural area to allow a pipeline across their property. But they agreed to compensate you for loss of that TAP, did they not? No, Your Honor. They've agreed to allow some compensation for conversion of the actual mechanism by which she receives the gas and that will allow then propane gas to be served. But that's now been the case for approximately six months. There have been several disruptions to service, several gas leaks that required the fire department to come out. The cost of the propane is significantly higher. That's what this case is about. The new pipeline is in place, correct? Yes. Is it operational? I could not answer that. Well, the old pipeline isn't carrying gas, I take it. That's my understanding. So you've got to assume the new one is. I think that's reasonable. But again, this has never been about keeping the pipeline out. What's it about? So by condemning the properties, Columbia will completely rewrite the terms of the easement. But that's already been done, right? I mean, what are you asking us to do? You're asking us to send it back and have them dig out the old new pipeline and lay it next to the old pipeline? No, no, no. To simply say that the replacement pipeline is subject to the same easement agreement that it's always been subject to. The TAP is a piece of it. But there's also a vastly expanded set of rights afforded to Columbia under the proposed new easement agreement. They're now allowed to use pesticides to clear the easement agreement. And this is a farm. She's no longer entitled to the TAP. It's subject to their sort of ongoing rules for easements, which themselves are subject to change. It's a far different set of terms. But doesn't that easement agreement talk about not only may, the word may, but doesn't talk about alongside the original line? So a couple of points there. First of all, I don't believe that the alongside modifies replacement of the pipeline. In fact, if you look at the easement agreement, the language says that said company to pay any damages which may arise to crops and fences from the relaying, maintaining and operating said pipeline. So replacement of the pipeline is discussed in an entirely different section of the easement agreement from the portion that discusses the laying of a second pipeline. In other words, if you want to put down another pipeline, not a replacement for line 1570, but an entirely new pipeline, that needs to be done alongside the first. If you are relaying the pipeline, it is not subject to the alongside modifier. Second, Columbia. I think the argument on the other side is if it's not alongside the first, there's no requirement that there be a TAP. I mean, the TAP here says, or excuse me, the provision here says TAP to be installed on this line at point nearest the residence. This line meaning line 1570. And frankly, as I'll get to that first line, the one that is being replaced, should not remain physically in the ground under the terms of this agreement. So in other words, there should be a replacement. Columbia is free to do it across a different portion of her property if that's in fact necessary. But the original pipeline cannot be abandoned and left in her front yard. There's nothing in this agreement that allows Columbia to do that. Second, going back to the alongside argument. Doesn't the easement agreement give Columbia the option to remove the original pipeline? It means by negative inference, it has the option not to remove it. I interpret this to set forth the rights that have been granted to Columbia. They are allowed to lay, maintain, operate, repair and remove a second line of the original pipeline. That they've been yes, they've been granted those rights. And by exclusion, anything not granted to them is reserved to misclassic, which is in in the language of the agreement. It in fact says that any rights not granted to the company. Yes, the said grant or to fully use and enjoy the said premises, except for the purposes here and before granted to the said company. So by exclusion, anything that she has not expressly granted to them, they don't have the right to do. And this is consistent with the intent of this agreement as well. Keep in mind, this is to provide her access. So leaving a steel cylinder at the front of her property, it does nothing to effectuate the purpose of the agreement, which is from her perspective to receive access to natural gas service. Well, we get you back on rebuttal. Thank you. Good afternoon, Your Honors. May it please the court. My name is Nicole Bagnell and I represent Columbia Gas Transmission, along with my co-counsel, Rachel Malazzo. Though many arguments were raised in the briefing, I think Judge Ambrose hit the nail on the head when he said the real issue here is the tap. Mrs. Klaffick wants to keep her tap to receive gas. Did you tell the Federal Energy Regulatory Commission that you would compensate the landowner for the eliminated farm taps? What we told FERC, yes, Your Honor, what we told FERC was that we would pay for the conversion to an alternate energy source, which may be propane or electricity. So that was affirmatively stated in our application to the FERC and stated in the FERC's order that that would take place. And Columbia will do that. To date, Mrs. Klaffick has refused that, however, Your Honor. It seems like when FERC gave the approval, it was with the condition that you will do that. Is that correct? Yes, Your Honor. So there were 37 taps on the old pipeline that were approved by the FERC to be abandoned and removed when the pipeline was abandoned. Over what distance were those 37 taps? So the old pipeline was 34 miles, Your Honor, and I don't know how they're spread out amongst the pipeline. Over 34 miles. Yes, Your Honor. What's the difference between the initial pipeline and the replacement pipeline here on the Klaffick property? There are a number of differences, Your Honor. The purpose of the FERC certificate... I'm sorry, the distances. I'm sorry. I apologize. Oh, the distance of line actually on the Klaffick property. I guess it goes a little jagged, but what's the maximum distance between the two? I don't know that off the top of my head, Your Honor. I do know that in the record on page 354, there is a copy of the map that shows the existing and then the new. But I don't have that number at my fingertips. What do you make of counsel's abandonment argument? Any obligations that your company might have? Your Honor, what the 1946 agreement says is it provides rights to Columbia, but it does not require removal of the pipeline. It says they have the right to remove the pipeline should they want to, but it doesn't require them to do so. And in fact, FERC analyzed this issue and determined that it was in the public interest in the areas where Columbia sought to abandon the pipeline to leave it in place due to environmental and other issues. And so since the property rights between the parties don't require it expressly in the agreement, there's no need for it to be done, particularly when FERC agrees. So the gas delivery has been switched over from the old to the new? So, yes, Your Honor, the old pipeline is completely out of service. The new pipeline has been, the construction has been completed and has been in service since the fall. Now, counsel cites to another case, a case that I was on a few years ago. Your same client was arguing that 25 miles was a long side. I'm glad Your Honor is familiar with that case because you'll know then that that case had nothing to do with a requirement of a long side. I'm sorry, Your Honor, I'm teasing every in that case. It was actually a case before Judge Brand and Columbia was seeking to build a new pipeline that was also a replacement. And Judge Brand read in to the requirements that there was a requirement that the replacement be in the vicinity of or adjacent to the original pipeline. And Your Honor and the panel looked at that and said there was no such requirement and found that the condemnation was appropriate and went forward. And so really, Your Honor, that does not apply here. But in that case, I think it raises an important point. It's the landowners here who are not who are arguing that the alongside shouldn't matter, which is an interesting point. Columbia's here trying to do the right thing and condemn and pay for right. They're saying what you said the last time. I guess so, Your Honor. But really, I mean, here where it's clearly on its face, not alongside. Columbia is condemning for the rights and will pay just compensation for the new rights taken. The compensation is still in the district court. Yes, it is, Your Honor. The trial on just compensation has not been set yet. Will that include this gas tap issue? It can, Your Honor. In the trial on just compensation, the diminution in value of the property to the landowner is their burden. And if they prove there's a diminution in value to the property as a result of the new pipeline, they can recover that as just compensation. As a result of not having access to this previous tap? If that's an element of what they prove, yes, Your Honor. And even though this is in the federal district court, the Pennsylvania eminent domain law applies to the proceeding on the assessment of damages, does it not? Your Honor, what the Natural Gas Act and what the subsequent case law have found is that you look to federal law on the diminution in value of the property, but there aren't any significant differences between those laws. And that is, you look at the before and after value and take into account any diminishment in the property as a whole as a result of the taking. Okay. If I might very briefly just make a couple of points, Your Honors, before I'm done. The plain language of the 1946 agreement makes clear, and there's no ambiguity on the face of that document, that it does provide the opportunity to lay a second line alongside the original pipeline. But as we've already discussed, Your Honors, that is not the case here. There are a couple of undisputed facts, that there are two pipelines on the classic property, that Columbia condemned an easement for a new pipeline. In addition to that, new temporary construction easements and an access road on the classic property, that Columbia holds a valid FERC certificate for the new pipeline. What do you plan to do with the unused pipeline that was initially put in back in the 40s? That pipeline has been abandoned, Your Honor, but Columbia will maintain it to make sure that there are no environmental or other issues with that pipeline. Is that part of the FERC approval? Yes, Your Honor, that's part of the FERC certificate. All right. Mrs. Classic admits that the new pipeline is not alongside the existing pipeline, and she also admits that she refused to sign a new easement or an amendment that provided for the new pipeline without a TAP. One thing that Mr. Gibbs mentioned in his argument was that the new easement has other terms. That was part of the settlement negotiation, but as this Court is well aware, in condemnation, it's very clear what Columbia will obtain. It's the right-of-way as defined in the complaint, and the items that Mr. Gibbs mentioned are not defined in the complaint. The three things Columbia had to prove for summary judgment were the existence of an easement, which was undisputed, the existence of a necessary route, which was undisputed, and that we were unable to agree. And we're here today, Your Honors, because we were unable to agree. The 1946 agreement simply doesn't apply in this case. The second case that we're here for is the declaratory judgment action, and again, that revolves around a plain reading of the unambiguous 1946 agreement, Your Honors. It says a TAP to be installed on this line at the point nearest the resident. It contemplates, obviously by its plain language, a TAP on the line, not multiple TAPs. It also contemplates that that TAP be on the pipeline. It refers to on this line, and the line that's contemplated in the agreement is the original pipeline. It's subject to a survey, and the survey was a requirement of that initial easement. Classic has that TAP. She had that TAP for over 60 years. This is a new pipeline that was built under a condemnation, and it simply doesn't apply. I've already addressed the issue about removal, Your Honors, and so rather than belabor it, I'd just like to address one final point, which is that Classic argues this is a windfall to Columbia, and that is most certainly not the case. Can I just stop you? You mentioned a few minutes ago you had two points to add, and you said you gave two, and then you said I got three more. Now you're adding a sixth. And is there something that's not in your brief that you think we really need to know? No, Your Honor. Thank you. Thank you. Your Honors, I unfortunately cannot even. Now, I may have said to Ms. Bagdell that, you know, she was piling on, but nonetheless the points she makes are valid, are they not? Actually, I take issue with several of them, which I'd like to get to as quickly as possible. So which ones do you take issue with? Well, she indicated that FERC has analyzed the abandonment issue. No, what she said was that FERC had given an approval, and among the things that it's approved or required is that for the initial pipeline that it be maintained. Your Honor. And if it's not maintained, I mean, you've got somebody making a statement in court that you can use to your benefit, but my guess is what she says is she has full authority to say. I don't recall seeing that in the approval, and it sort of defies. You should be happy that somebody is, you know, we will receive, you will kick off. But let me just caution that really what abandonment means in the context of the FERC application is a removal of that pipeline from FERC's jurisdiction. Are you saying that you think that they will not maintain that initial pipeline? I don't recall seeing that. No, but are you saying that you believe in the future they will not do that after this representation in court today? Not unless it's repurposed for some reason. And now it will be outside of FERC's jurisdiction, so we'll have no mechanism to require that maintenance. But regardless, that's still a hunk of corroding pipe that is buried six inches deep along the front edge of her property, about 3,000 feet of it. I don't see why that's consistent with the purpose of the 1946 easement agreement, particularly where there's nothing expressly allowing her, allowing Columbia to abandon it. That easily could have been included as one of the rights granted to Columbia. I will also point out that with respect to the adjacency discussion and the 2013 case before this court, that definition provided by Columbia and urged upon the court was without reference or any specific context. Just as a matter of law, two objects are to be defined as adjacent to each other when they're within. The point is, do you have rights if it's alongside? Well, first of all, I would argue that replacement does not require it to be alongside. Second of all, Pennsylvania law really requires a flexible reading of their rights here. First of all, under Pennsylvania law, where an easement term— This really comes back to Judge Resharf's question. What do you want? Line 1570 should remain subject to the existing 1946 easement agreement, which, among other things, does require the provision of a TAP. And to the extent that Columbia refuses to do so, that should be part of damages determination. Well, that's on the horizon. The damage determination, as I understand it, is on the horizon. And according to your colleague, if you can present evidence to that effect, then maybe a judge or jury could quantify for you the damages here. Well, in the context of a condemnation proceeding, that's a taking. And it's—I mean, I'm not sure that it's an appropriate subject for a condemnation hearing because Columbia can't take property which was actually its to begin with. That property isn't named in the condemnation complaint filed by Columbia, which, in order for it to take it, it would have to identify it as part of the complaint. Has the condemnation proceeding begun? Oh, yes, Your Honor. Has it concluded? No, the just compensation phase remains. Okay. With respect— Is the damage proceeding scheduled? No. It's essentially been postponed pending the outcome here. Pending the outcome of this case. Yes, Your Honor. I'd just like to ask that the court take a sort of step back and look at what has actually happened here. Columbia has proposed to change the location of its pipeline. It's the only thing that's changing here. Columbia hasn't actually seen fit to really identify the need for it. It's always identified as, you know, to avoid an environmental issue or a construction obstacle. Never actually even gotten the basis for the relocation. But do that as it may. Columbia is asking to change the location of its pipes. Ms. Klaffick has no objection to that, and she's, in fact, entitled under Pennsylvania law to waive any restriction or contract term that is solely for her benefit, which any geographic restriction would be for Ms. Klaffick's benefit. But she has said that she has no objection to Columbia relocating it, and yet Columbia has initiated an eminent domain action. But you're going to get something from the eminent domain action. I keep thinking in the back of my mind that the most significant part here is that the condemnation action somehow doesn't provide for a farm tap. It also doesn't. I mean, but they haven't decided yet how much compensation your client's going to get, correct? That's correct. Okay, and so it may turn out well, it may not. Or it may not turn out to your client's liking as much as she would want. But that's not today's case. The question here is this is a contractual argument based on a 1946 easement agreement, and it looks like the biggest difference is that they're here, they're saying we're not going to replace alongside. We're going to start all over. And it doesn't have a farm tap, and I don't know what I can do to help you here. There's nothing in the 1946 easement agreement that requires the replacement pipeline to go in in the same location. It's geographically ambiguous. It says that it needs to be laid along a line surveyed. That goes back to this first question. What do you want us to do? What do you want? Do we get the new one and move it closer to the old one? No, no, no, no. Nothing physically happens. So what do you want us to do? If you're writing this opinion in your favor, what would you – how would you write this? I would write it that the line 1570 remains subject to the 1946 easement agreement. That's what this case is about for Columbia, is getting rid of that easement agreement because it doesn't have terms that they want to abide by. Even though the 1946 agreement is an optional? It's a may? Are you referring to Columbia may lay? Yes, sir. I mean, that's correct. In terms of granting them those rights, that's the language that it used. So in 50 words or less, what would you have us decide in your favor? I would reverse the decision in the condemnation action, granting summary judgment, and dismiss that action. I'd reverse the decision in the declaratory action and remand with instructions that Columbia is required to abide by the terms of the 1946 easement agreement, which includes provision of a farm tap and no abandonment of an inoperative piece of pipeline on her property. And to the extent that Columbia isn't willing to do those things, there should be a hearing on damages. But it shouldn't be part of a condemnation action where there is no right of condemnation. That's reserved for instances where a pipeline company cannot acquire the property. Thank you. One last question. Could FERC have made the granting of the certificate of public necessity subject to the 1946 agreement? No, Your Honor, I don't believe it could. It couldn't? It has no jurisdiction to determine contractual rights. All right, what about the district court in the trial for damages under the condemnation action? Could they impose conditions similar without us directing them to? Could they impose the 1946 conditions? Well, I mean, I believe that they could. And to be frank, a result that ends with that agreement and the terms thereof still in force is acceptable to Ms. Claffer. I don't love the process by which we get there. And I'm not sure that precedentially it's a good thing to have a pipeline company acquiring property rights that it already has. But if the end result is the 1946 agreement, that's acceptable. Thank you very much. Thank you, Your Honor. Thank you to both counsel, all counsel for being with us today. And we'll take the matter under advisement.